

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

VERNON HAMMETT, et al., )
)
      Plaintiffs, )
)
v. ) Civil Action No.: 1:09-cv-1401
)
DEUTSCHE BANK NATIONAL )
COMPANY, et al., )
)
      Defendants. )

## Memorandum Opinion

This matter comes before the Court on Motions to Dismiss under FED. R. CIV. P. 12(b)(6) made by Deutsche Bank National Trust Company, Bravo Mortgage Asset Trust 2006-1 (Dkt. no. 6); Ocwen Loan Servicing, LLC (Dkt. no. 17); and Mortgage Electronic Registration System, Inc. (Dkt. no. 19) ("Defendants").[1] Also pending before the Court is Plaintiffs' Motion for Preliminary Injunction or Temporary Restraining Order (Dkt. no. 15). For the reasons that follow, Defendants' Motions (Dkt. Nos. 6, 17, 19) are hereby GRANTED and this case is DISMISSED. Further, Plaintiffs' Motion for Preliminary Injunction or Temporary Restraining Order (Dkt. no. 15) is DENIED.

### I. Background

Plaintiffs initiated this action in state court, alleging a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.*, as well as claims for declaratory judgment and quiet title.[2] Plaintiffs' pertinent factual allegations are as follows.

---

[1] Another previously-named defendant, Professional Foreclosure Corporation of Virginia ("PFC"), was dismissed from this action by Consent Order on February 26, 2010 (Dkt. no. 23).

[2] Plaintiffs' Complaint originally contained seven counts, but Plaintiffs thereafter withdrew Counts V (labeled simply as "Injunction"); VI ("Fraud"); and VII ("Due Process Violation") in their Opposition to Defendants' Motion to Dismiss. Further, Count III of the Complaint alleged a claim for Breach of Fiduciary Duty against former Defendant PFC, and this claim is also deemed withdrawn given Plaintiffs'

1

On October 6, 2005 Plaintiffs purchased a residential property in Alexandria, Virginia. Compl. at ¶ 13. As part of that transaction, Plaintiffs executed a promissory note (the "Note") in the amount of $475,000 and a deed of trust (the "Deed") securing the note in favor of Encore Credit Corporation ("Encore").[3] Compl. at ¶ 13-16. The Note states that "[i]n addition to the protections given to the Note holder under this Note, a ... Deed of Trust...dated the same date as this Note protect[s] the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note." Note at ¶ 11. The Note was presented to the Court with an attached "allonge" which contains a blank endorsement which reads: "Pay To The Order Of ____ Without Recourse Encore Credit Corp. A California Corporation." Defendants are now in possession of the Note. Comp. at ¶ 13-16.

At some point after executing the Note and the Deed, Plaintiffs "refused" to continue paying on their obligation under the Note. Compl. at ¶ 49. Defendants then initiated foreclosure proceedings on the Property. Defendant Deutsche Bank, as Trustee for Defendant Bravo Trust ("Deutsche Bank"), subsequently purchased the property at the foreclosure sale, though Plaintiffs apparently continue to occupy the premises.

## II. Standard of Review

---

voluntary dismissal of PFC from this suit as mentioned above. Thus, the only remaining claims are those listed above.

[3] Plaintiffs explicitly reference and rely upon the documents at issue in this case, and do not plausibly dispute the authenticity of these documents. Thus, the Court may consider them at this stage in the case. *See American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). At the hearing held on the Motions on February 26, 2010, the Court inquired into the authenticity of these documents and the transactional history relating to Plaintiffs' loan and also received Defendants' counsel's representation, as an officer of this Court, regarding the legitimacy of the documents at issue in this case. Thus, notwithstanding Plaintiffs' counsel's haphazard representations in his brief based on "naked assertions devoid of further factual enhancement," *Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citations and quotations omitted), the Court finds no plausible basis to doubt the authenticity of these documents.

Under Fed. R. Civ. P. 12(b)(6) an adequate Complaint must contain "sufficient factual matter, accepted as true 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is "facially plausible" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Procedural Posture

Plaintiffs filed their Complaint on September 8, 2009 in the Circuit Court for Fairfax County, Virginia. Defendants then removed the action to this Court and filed motions to dismiss on January 13, 2010 and February 25, 2010, respectively. Plaintiffs filed their Motion for Preliminary Injunction or Temporary Restraining Order on February 24, 2010.[4]

### IV. Analysis

Plaintiffs allege several counts against the respective defendants. At their core, Plaintiffs' allegations seek to challenge the authority of the various named Defendants to enforce the deed of trust securing the Note executed by Plaintiffs.[5]

---

[4] As Plaintiffs indicate, Defendant Deutsche Bank purchased the property at the foreclosure sale and subsequently filed an unlawful detainer action in the General District Court of Fairfax County against Plaintiffs. The General District Court then awarded possession to Deutsche Bank, which Plaintiffs appealed to the Circuit Court. The Circuit Court then granted possession to Deutsche Bank on December 3, 2009, but granted Plaintiffs' motion to stay execution of the writ of possession and required them to pay $5400 by January 5, then pay $2,000 a month until any independent action concluded, which Plaintiffs have been unable to do. Thus, according to Plaintiffs, a writ of possession in favor of Deutsche Bank will issue "at any moment."

[5] In the Complaint and Brief in Opposition to Defendants' Motion to Dismiss, Plaintiffs' counsel repeatedly uses the term "standing" or "Article III standing" in alleging that the various Defendants are without authority to foreclose on the Plaintiffs' home or enforce the promissory notes at issue. Counsel completely conflates and misunderstands the concept of "Article III standing," which refers to a plaintiff's ability to maintain a suit in federal court pursuant to the "case or controversy" requirement found in Article III of the United States Constitution. *See Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 2136 (1992). The same can be said for counsel's insistent citation of FED. R. CIV. P. 17's "real party in interest" requirement which, again, pertains to the ability of a *plaintiff* to bring a suit in federal court. *See* 6A FED. PRAC. & PROC. CIV. § 1543 (2d ed.)("By its very nature, Rule 17(a) applies only to those who are

3

Plaintiffs allege that the entities which foreclosed on their home are not entitled as a matter of law to do so. Specifically, Plaintiffs allege that "Defendants have no legal or equitable right or interest in the Promissory Note and/or the Deed of Trust, or in the alternative, the obligation has been extinguished, satisfied, is void, or has been split from the Deed of Trust resulting in an unsecured Note..." Compl. at ¶ 67. However, nothing in Plaintiffs' conclusory allegations provides a plausible basis for relief after considering the settled law of negotiable instruments or the enforcement of a deed of trust securing notes after their negotiation.

Under Virginia law, the holder of an instrument or a nonholder in possession of the instrument with the same rights as the holder may enforce the instrument. Va. Code. Ann. §8.3A-301. Further, an individual may be "entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.* An individual becomes the "holder" of an instrument through the process of negotiation, and if "an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder." *Id.* at §8.3A-201(b). On the other hand, if an instrument has a blank endorsement, it is considered "payable to bearer," and it may be negotiated by transfer of possession alone. *See* VA. Code §§ 8.3A-201(b) & & 8.3A-205. In this case, the face of the Note shows that the Note has a blank endorsement. *See* Note at 5. Accordingly, it may be negotiated by a simple change in possession and enforced by its current possessor, Deutsche Bank.

---

asserting a claim and thus is of most importance with regard to plaintiffs" and parties asserting cross-claims and counterclaims).

4

Further, absent a contrary provision, notes are generally freely transferable, and the transferee retains the right to enforce the instrument. *See* Va. Code Ann. § 8.3A-203(b) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument..."); *see also Johnson v. Ferris*, 58 Va. Cir. 7, 2001 WL 1829719, at *4 (May 31, 2001 Va. Cir. Ct.)(noting that "in the absence of an express provision against assignment of a contract not involving personal skill, trust, or confidence, the contract is freely assignable" and citing *J. Maury Dove Co. v. New River Coal*, 150 Va. 796 (Va. 1928)). The explicit terms of the Note at issue here indicate that it is freely transferable. *See* Note, ¶ 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder"). As the Virginia Supreme Court noted long ago, the promise to pay a mortgage is a promise to pay a "negotiable note[] secured by [the mortgage] to the respective payees thereof, or to the person or persons to whom [it] might...be negotiated..." *Blanton v. Keneipp*, 155 Va. 668, 681 (Va.1931).

By their own allegations, Plaintiffs admit they "refused to pay" on the Note. Compl. at ¶ 49. In Virginia, the obligation to pay an instrument can only be "discharged as stated in [Title 8.3A] or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract." Va. Code § 8.3A-601. Plaintiffs offer no allegation that they reached an agreement with a noteholder or took any other action which would suffice to discharge the obligation under the Virginia statute. Thus, "to permit the parties to the [instrument] to object to its payment, on any of the grounds stated, would greatly impair the negotiability of bills and notes; their most distinguishing,

most useful, and most valued feature." *Whitworth v. Adams*, 1827 WL 1200 an *45 (Va. 1827).

Next, the so-called "split" of the deed of trust from the promissory note alleged by Plaintiffs does not render the deed unenforceable nor does it leave the promissory note unsecured. Under Virginia law, when a note is assigned, the deed of trust securing that debt necessarily runs with it. *See Williams v. Gifford*, 139 Va. 779, 784 (1924); *see also Stimpson v. Bishop*, 82 Va. 190, 200-01 (1886)("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). Moreover, as the Virginia Supreme Court has recognized, when deeds of trust and their underlying notes are 'separate and distinct' documents,

> ... in appropriate circumstances, we have recognized that 'notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract.' So long as neither document varies or contradicts the terms of the other, terms of one document which clearly contemplate the application of terms in the other may be viewed together as representing the complete agreement of the parties.

*Virginia Housing Development Authority v. Fox Run Ltd. Partnership*, 255 Va. 356, 364-365 (Va. 1998). Thus, the deed of trust continues to secure the holder of a note and nothing in the negotiation or putative securitization of a note renders it unsecured.[6]

---

[6] Further, pursuant to Va. Code § 55-59(9), "[t]he party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby" are empowered to appoint a substitute trustee, "regardless of whether such right and power is expressly granted in such deed of trust." *Id.* Part of Plaintiffs' argument is that none of the Defendants are the "party secured by the deed of trust" or "the holder of greater than fifty percent of the monetary obligations secured thereby," and thus neither Ocwen or PFC were authorized to act as a substitute trustee. However, as discussed above, the faces of the documents referenced in the Complaint plainly indicate that the Note is endorsed in blank and is possessed by Deutsche Bank, which is thus the "party secured by the deed of trust." The face of the "Appointment of Substitute Trustee" indicates that Deutsche Bank then appointed PFC as substitute trustee. Once appointed, a substitute trustee is empowered by Va. Code § 55-59(7) to foreclose and sell property provided as security for the notes. FPC has now been voluntarily dismissed from this suit and the Court finds nothing further in the appointment of a substitute trustee here which contravenes Virginia law.

Finally, Plaintiffs also advance the argument in the Complaint that their obligations under the Note have been "extinguished" or "satisfied," presumably because "credit default swaps" had been purchased on Plaintiffs' loans. However, as this District recently held in a nearly identical case, and this Court agrees, "[Plaintiff] provides no factual or legal basis, and the Court finds none, to support his contention that because [Plaintiff's] default triggered insurance for any losses caused by that default or 'credit enhancements,' he is discharged from the promissory notes and the Property is released from the deeds of trust." *Horvath v. Bank of New York*, 2010 WL 538039 at *2 (E.D.Va. January 29, 2010).[7]

### a. Count I- FDCPA

Count I of Plaintiffs' Complaint alleges a claim under the FDCPA against Defendant Ocwen Loan Servicing, LLC ("Ocwen").[8] In order to establish a FDCPA violation, Plaintiffs must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005). The FDCPA defines a debt collector as "any person who uses an instrumentality of interstate

---

[7] Plaintiffs' repeated citation to *Nizan v. Wells Fargo Bank Minnesota Nat. Ass'n*, 274 Va. 481 (Va. 2007) is unavailing. In that case, the Virginia Supreme Court identified that the doctrine of "double recovery" is a *defense* based in equity "that a party with two valid causes of action is entitled to 'seek compensation in each, [but is], nonetheless, estopped from collecting the full amount [of damages] in the second action if they were partially paid therefor in the first.'" *Id.* at 491 (citations omitted). Plaintiffs cite no case indicating this defense can be converted somehow as a basis on which to bring a claim before this Court. Even if that were possible, Plaintiffs' allegations on this issue are completely naked and "devoid of further factual enhancement," *Iqbal*, 129 S. Ct. at 1949 (citations omitted), and provide no plausible basis on which this Court can relieve Plaintiffs from their obligations on the notes and allow them to keep their home free and clear. Interestingly, in *Nizan,* the defendant bank served as trustee of a REMIC trust which acquired the note on the loan at issue in that case. Conspicuously absent in *Nizan* is any reference to the note's unenforceability because it is held in such a trust.

[8] Count I was also alleged against PFC, which, as noted, has been voluntarily dismissed as a party from this suit.

commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6)(emphasis added).

This District recently emphasized that "[m]ortgage servicing companies and trustees exercising their fiduciary duties enjoy broad statutory exemptions from liability under the FDCPA." *Horvath*, 2010 WL 538039 at *3 (E.D. Va. Jan. 29, 2010)(citing 15 U.S.C. §1692a(6)(F)(i) ("The term [debt collector] does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement") and 5 U.S.C. §1692a(6)(F)(iii) ("The term [debt collector] does not include... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.")).

The Complaint does allege, albeit generically, that Ocwen acted without "authority to enforce the obligation, or in the alternative, the obligation has been extinguished, satisfied, or has been split from the Deed of Trust resulting in an unsecured Note ...or was acquired after an alleged declaration of default." Compl. at ¶ 64-65. However, these are precisely the type of "threadbare" and unsupportable assertions *Twombly* and *Iqbal* are meant to root out.

Further, as this District has also previously recognized, "[i]t is well-settled that provisions of the FDCPA generally apply only to debt collectors...[a]nd, creditors are not liable under the FDCPA." *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 717 (E.D.Va. 2003). More specifically, "creditors, mortgagors, and mortgage servicing

companies are not debt collectors and are statutorily exempt from liability under the FDCPA" *Id.*; *see also Warren v. Countrywide Home Loans, Inc.*, 2009 U.S. App. LEXIS 18191 (11th Cir. Aug. 14, 2009) ("several courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property falls outside the ambit of the FDCPA…").

More importantly, even if the FDCPA did apply, Plaintiffs' FDCPA claim, like Plaintiffs' other claims, is based on the specious premise that the named Defendants somehow have no right, title, or interest in the Deed or the Note, despite the plain face of those documents. As the foregoing makes clear, Plaintiffs offer no plausible basis on which the Court can agree with this premise.

### b. Count II – Declaratory Judgment

Count II of the Complaint seeks a declaratory judgment from the Court declaring that none of the Defendants have any proper legal or equitable interest in the Property. Compl. at ¶ 67. As Defendants note, this theory certainly seems inconsistent with Virginia's status as a non-judicial foreclosure state. *See* Va. Code §§ 55-59.1-59.4. Further, as this District recently noted in *Horvath*, a declaratory judgment is an inherently forward-looking mechanism, intended to guide parties' behavior in the future. 2010 WL 538039 at *1 (citing *Douros v. State Farm Fire and Casualty Co.*, 508 F.Supp.2d 479, 482 (E.D.Va. 2007)(declaratory relief is appropriate where the "relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding"). In this case, as in *Horvath*, Plaintiffs' home has already been foreclosed on, and thus, seeking a declaratory judgment as to Defendants' title and interest in the property is inapposite to the underlying purpose of declaratory relief.

9

Further, given the Court's foregoing discussion of the transferability of promissory notes and the deeds that secure them, the Court simply has no basis to award the declaratory relief sought by Plaintiffs in this action.

### c. Count IV – Quiet Title

In Count IV, Plaintiffs assert a claim to quiet title to the property in dispute. Plaintiffs simply assert the legal conclusion that Plaintiffs are "the only party to this matter than can prove legal and equitable ownership interest in the Property." Compl. at ¶ 73. "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 277 Va. 230, 238 (2009). This claim resembles Count II, and essentially seeks a declaration that none of the Defendants hold any claim to or interest in the property, but does so in a wholly conclusory fashion, without any factual pleadings in support.

Again, given the Court's foregoing discussion of the transferability of promissory notes and the deeds that secure them, the Court has no basis to award the relief sought by Plaintiffs in Count IV of their Complaint.

## IV. Conclusion

Plaintiffs' Complaint fails to state a plausible basis on which relief may be granted. As such, all counts must be dismissed as to Defendants Deutsche Bank National Trust Company, Bravo Mortgage Asset Trust 2006-1 (Dkt. no. 6); Ocwen Loan Servicing, LLC (Dkt. no. 17); and Mortgage Electronic Registration System, Inc. (Dkt. no. 19) ("Defendants"). Accordingly, this case is DISMISSED.[9] Further, because the

---

[9] Plaintiffs failed to file a separate motion for leave to amend their Complaint, and instead seek leave to amend at the end of their Memorandum in Opposition to Defendants' Motion to Dismiss. Given the

Court grants Defendants Motions to Dismiss, Plaintiffs' Motion for Preliminary Injunction or Temporary Restraining Order (Dkt. no. 15) is DENIED as moot.

An appropriate order shall issue.

Alexandria, Virginia
March 25, 2010

/s/
Liam O'Grady
United States District Judge

---

Court's consideration of the Note and Deed, the Court presently fails to see any basis on which Plaintiffs might state a claim for relief after amendment. Nonetheless, recognizing the need to grant leave to amend liberally, Plaintiffs are given leave to amend, but with the proviso that counsel must do so with a good faith basis pursuant to FED. R. CIV. P. 11 (and the potential for sanctions thereunder) after full consideration of this Memorandum Opinion and those issued by this District in similar cases. Dismissal in this case will automatically be deemed with prejudice after 15 days if no amended complaint is filed by Plaintiffs.